## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Charles Pernell Prophet and<br>Shirley Ann Prophet,<br><br><br>Debtors. | Case No. 20-03131-dd<br><br>Chapter 7 |
| In re,<br><br>Steven Rosenchein,<br><br><br><br>Debtor. | Case No. 20-03171-dd<br><br>Chapter 7 |
| In re,<br><br>Christine Marie Naughton,<br><br><br>Debtor. | Case No. 20-03293-dd<br><br>Chapter 7<br><br><br>**AMENDED ORDER**[1] |

This matter comes before the Court upon remand from the United States District Court for the District of South Carolina for further proceedings in conformity with its decision in *In re Prophet*, No. 9:21-CV-01082-JMC, 2022 WL 766352 (D.S.C. Mar. 14, 2022). In that case, Benjamin R. Matthews and Benjamin R. Matthews & Assoc. (collectively, "Mr. Matthews") appealed this Court's holding that bifurcated fee agreements in bankruptcy cases are impermissible under District of South Carolina Local Bankruptcy Rule 9011-1(b) ("SC LBR 9011-1(b)"). On

---

[1] The Order is amended pursuant to Fed. R. Civ. P. 60(a) to correct a typographical scrivener's error. This amended order makes no substantive changes to the Court's holdings.

appeal, the District Court found that bifurcated fee agreements do not violate SC LBR 9011-1(b)—the local rule regarding continued representation.

Because the Bankruptcy Court limited its findings to its initial determination that Mr. Matthews violated SC LBR 9011-1(b), this was the only issue before the District Court on appeal. The District Court made no determination as to the reasonableness of attorneys' fees, the propriety of using Fresh Start Funding ("FSF") to collect from the Prophets, Ms. Naughton, and Mr. Rosenchein (collectively, the "Debtors"), the adequacy of Mr. Matthews' disclosures to the Debtors, or whether the record shows that the Debtors provided informed consent for the structure of the fee agreements. Given that the determination on the initial issue has been reversed, the Court will now consider the remaining arguments.

In accordance with Local Civil Rule 7.08 (D.S.C.), the Court concludes that oral argument would not materially assist its deliberations on the issues left for development on remand. The Court has considered the testimony, evaluated all the exhibits admitted into evidence, and reviewed the applicable law. After careful consideration, and for the reasons discussed below, the motion (Dkt. No. 22; the "Motion")[2] of the United States Trustee (the "UST") for review of attorney conduct is granted in part and denied in part.

## I.    PROCEDURAL BACKGROUND

On September 25, 2020, the UST filed the Motion requesting that the Court review the conduct of Mr. Matthews, cancel the fee agreements and order the return of the fees paid, and grant other relief as may be appropriate pursuant to 11 U.S.C. §§ 105(a), 329(b), 526, Federal Rules of Bankruptcy Procedure 2016 and 2017, and the Court's inherent authority to address attorney conduct. The Motion addressed Mr. Matthews' bifurcation of services and fees as an effort to

---

[2] Unless otherwise noted, all citations to the docket included herein are references to documents filed in *In re Prophet*, Bankruptcy Case No. 20-03131-dd.

prevent the attorneys' fees from being discharged by the Debtors' respective bankruptcy cases, instead requiring the Debtors to pay the fees over time, post-petition. On November 11, 2020, Mr. Matthews filed an objection to the Motion (Dkt. No. 35, the "Objection"). On December 8, 2020, the parties submitted a joint statement of facts not in dispute (Dkt. No. 42, the "Joint Statement"). On February 4, 2021, and February 17, 2021, the Court conducted hearings on the Motion. The Court entered its order finding the bifurcation agreements impermissible under SC LBR 9011-1(b) on March 29, 2021 (Dkt. No. 50; the "Order"). On April 12, 2021, Mr. Matthews filed a notice of appeal of the Order (Dkt. No. 55). On March 14, 2022, the District Court for the District of South Carolina reversed the Order and remanded the cases for further proceedings. Following the District Court's remand, and in accordance with the Court's instructions of April 22, 2022, supplemental briefs were filed on May 19, 2022 (Dkt. Nos. 84 and 85). Accordingly, this matter is ripe for adjudication. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334 and 157. As this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), the Court may enter a final order.

## II.    FACTUAL BACKGROUND

While exploring different marketing options for his law firm in the spring or summer of 2019, Mr. Matthews first became aware of bifurcated fee arrangements in chapter 7 cases across the country, but he decided not to use them in his practice. However, in March of 2020—as the COVID-19 pandemic began and consumer bankruptcy filing rates declined—Mr. Matthews determined he needed to do something to keep his law firm afloat and to avoid laying off staff. He decided to begin offering clients the option of bifurcated fee arrangements and entered into a contract with FSF, pursuant to which FSF provided Mr. Matthews with financing to cover expenses associated with the bifurcation of fees. FSF also agreed to assist Mr. Matthews with

collection of his accounts receivable, collecting fees due over time from debtors opting to use the bifurcated fee system while retaining a portion of collections. Finally, FSF extended a line of credit to Mr. Matthews so that he had indemnification liability for shortfalls in collections.

As a result of his agreement with FSF, Mr. Matthews' fee structures with his clients changed. Upon choosing Mr. Matthews to represent them, Mr. Matthews' clients had the option of choosing to pre-pay all fees for a chapter 7 case or splitting the engagement into pre- and post-petition services using pre- and post-filing agreements. If a client chose the first option to prepay all fees, the client would enter into one agreement with Mr. Matthews, covering both pre-filing and post-filing services for a fixed fee of $2,350 (including the filing fee) and providing for certain supplemental post-filing services charged at $300 per hour for attorney time and $150 per hour for paralegal time. Mr. Matthews claims to have lowered the fee for this option from the $2,500 he charged before beginning to offer the bifurcation option. Alternatively, Mr. Matthews offered a bifurcated fee option where the client could either pay $500 pre-filing to cover the filing fee and other out-of-pocket costs, or pay zero dollars down.[3] Mr. Matthews also accepted other partial payment alternatives as well, but a client who chose one of the bifurcated options would be responsible for making monthly payments directly to FSF beginning shortly after the bankruptcy petition was filed.

So that the client who chose a bifurcated fee arrangement would understand the terms of the entire representation before entering into the pre-petition agreement (the "Pre-Filing Agreement"), Mr. Matthews would send electronic copies of both the Pre-Filing Agreement and post-petition agreement (the "Post-Filing Agreement") when asking the debtor to sign the Pre-

---

[3] Attorneys should not advance filing fees and seek post-petition reimbursement, as advanced filing fees are dischargeable pre-petition loans. *Matter of Riley*, 923 F.3d 433, 439 (5th Cir. 2019); *In re Brown*, 631 B.R. 77, 102–03 (Bankr. S.D. Fla. 2021).

Filing Agreement. The Post-Filing Agreement could not actually be electronically signed by the client until after the bankruptcy petition was filed. Mr. Matthews testified that since he started offering bifurcation agreements, the vast majority of his clients signed the Post-Filing Agreement. Whether the Post-Filing Agreement was signed or not signed, Mr. Matthews agreed to continue representation unless the Court authorized a termination of the attorney-client relationship.

Mr. Matthews testified that FSF provided him with forms for the pre- and post-filing agreements[4] and he used those forms, with minor modifications. The Pre-Filing Agreement divided the work necessary for a chapter 7 case into three categories:

Pre-Filing Services
- Meeting and consulting with you as needed prior to filing your case;
- Analyzing the information from your intake questionnaire and other documents;
- Providing due diligence, legal analysis and legal advice in order to help you make important legal choices and to comply with the bankruptcy code and rules; and
- Preparing and filing your Chapter 7 Voluntary Petition, Statement about Social Security Numbers, Pre-Filing Credit Counseling Certificate and List of Creditors to start your Chapter 7 case.

Post-Filing Services
- Preparing and filing your Statement of Financial Affairs and Schedules;
- Preparing and filing your Means Test calculations and disclosures;
- Conducting a second signing appointment for you to review and sign your statements and schedules;
- Preparing for and attending your Section 341 Meeting of Creditors;
- Administrating and monitoring your case and communicating with you throughout the process;
- Forwarding the Trustee Questionnaire and debtor documents to the Trustee;
- Noticing your employer to stop any garnishments;
- Reviewing and responding to Trustee requests;
- Reviewing and advising you regarding any motions for stay relief;
- Reviewing and advising you regarding any reaffirmation agreements or redemptions;
- Reviewing and advising you regarding any creditor violations; and
- Any legal service required by the local rules.

Supplemental Post-Filing Services
- Reviewing and advising regarding any turnover demands from the Trustee;

---

[4] The Pre-Filing Agreement and Post-Filing Agreement are collectively referred to herein as the "Agreements."

- Attending any continued Section 341 Meeting of Creditors;
- Reviewing and advising regarding any 2004 exams and attending related exam;
- Reviewing and advising you regarding any audit by the US Trustee;
- Preparing and filing claims or objections to claims when appropriate;
- Reviewing and advising you regarding any lien avoidance matters;
- Drafting and/or negotiating a reaffirmation agreement and attending any related hearing;
- Preparing and filing any amendments to your statements and schedules; and
- Preparing and filing a motion to reinstate the case.

The Pre-Filing Agreement also explained the debtor's options for "Pay Before You File" or "File Now Pay Later." The Pre-Filing Agreement stated that if the debtor chose the pre-pay option, both Pre-Filing and Post-Filing Services would be included, but any Supplemental Post-Filing Services would be charged at Mr. Matthews' hourly rates. If the debtor chose the "File Now Pay Later" option, the Pre-Filing Agreement stated that only the Pre-Filing Services would be provided unless an additional agreement was signed. The Pre-Filing Agreement stated that if the debtor chose to enter into the Post-Filing Agreement, Mr. Matthews would provide the debtor with both the Post-Filing Services and the Supplemental Post-Filing Services.

The Pre-Filing Agreement explained the debtor's options after the case was filed. It stated:

After your case is filed, you will have three choices:

- You can represent yourself in your bankruptcy case (called "proceeding *pro se*");
- You can hire another attorney to represent you in your bankruptcy case; or
- *Within ten (10) days after your case is filed*, you can enter into a Post-Filing Agreement with us.

If you choose to represent yourself or to hire another attorney to represent you (either of which are completely up to you) you will not owe us anything additional. We will ask the bankruptcy court to allow us to withdraw as your lawyer in accordance with the bankruptcy rules, but we will continue to represent you in the case and perform all necessary services until and unless the bankruptcy court allows us to withdraw.

6

In the "Additional Important Terms" section of the Pre-Filing Agreement, near the end of the document, is a paragraph that provides:

> Unbundling or Limited-Scope Representation. By signing below, you acknowledge that the Law Firm has expressed that it is ready, willing and able to represent you for your entire chapter 7 case, even if you choose the *File Now Pay Later* option, which will require you to sign a Post-Filing Agreement. If you choose the *File Now Pay Later* option, you further represent that you are not doing this with the intention of having the Law Firm simply file your case and then withdraw, but instead to facilitate you making payments over time for your attorney fee so that you can have an attorney represent you through the entire chapter 7 process.

The Post-Filing Agreement contained a disclaimer at the very top of the agreement, stating "You must read, understand, and agree to the Post-Filing Agreement stated below before your Pre-Filing Agreement will be considered legally binding."[5] (Dkt. No. 48, Ex. 4). Prior to the bankruptcy filing, a debtor was required to sign a statement at the bottom of the Post-Filing Agreement that stated, "I, [Debtor], certify that I have read, understand, and agreed to review the Post-Filing Agreement, prior to signing the Pre-Filing Agreement for a File Now Pay Later Chapter 7."

Mr. Matthews testified that during pre-petition consultations with potential bankruptcy clients, he utilized a comprehensive questionnaire to find out about each debtor's income and expenses, assets, debts, liens, and other details of the financial situation. This consultation helped Mr. Matthews determine whether the client was an appropriate candidate for bankruptcy and, if so, under what chapter. Mr. Matthews also testified that this consultation helped him to determine whether a potential client was an appropriate candidate for bifurcation. Mr. Matthews stated that he understood his legal duty to perform this due diligence to adequately represent the debtor. However, on cross-examination, the extent of his true understanding of his pre-petition due

---

[5] By its very terms, the Post-Filing Agreement is made an agreement effective before the Pre-Filing Agreement is signed. Thus, by its nature, this is a pre-petition obligation subject to the discharge. At best, this is an incongruency. At worst, collection of the debt is a violation of the discharge injunction. Regardless, it is an inconsistency, as discussed infra.

diligence was less clear. Mr. Matthews testified that even if a client provided all required documents prior to the filing of the bankruptcy petition, as Ms. Naughton had done, he would not typically review all of the documents until post-petition, when the schedules were being prepared.

All three of the present chapter 7 cases were filed in August 2020. Charles and Shirley Prophet signed their Pre-Filing Agreement on July 7, 2020, filed their case on August 3, 2020, and signed their Post-Filing Agreement the same day. The Prophets paid a total of $2,400 for their case, with $1,200 paid prior to the bankruptcy filing and $1,200 to be paid post-petition. Christine Naughton signed her Pre-Filing Agreement in late July 2020, filed her chapter 7 case on August 20, 2020, and signed her Post-Filing Agreement the same day. Mrs. Naughton paid $0 pre-petition and agreed to pay a total of $2,800 post-petition. Steven Rosenchein signed his Pre-Filing Agreement on July 8, 2020, filed his chapter 7 case on August 7, 2020, and signed his Post-Filing Agreement the same day. He paid $500 for pre-petition services and an additional $2,060 in fees post-petition. With this background, the Court considers the pending Motion.

### III.   LEGAL STANDARD

#### a.   Pre-petition Duties of a Bankruptcy Attorney

In order to file a bankruptcy petition for a debtor, an attorney has certain pre-petition duties.

11 U.S.C. § 707(b)(4) provides, in relevant part:

> (C) The signature of an attorney on a petition, pleading, or written motion shall
>     constitute a certification that the attorney has—
>         (i) performed a reasonable investigation into the circumstances that gave
>         rise to the petition, pleading, or written motion; and
>         (ii) determined that the petition, pleading, or written motion—
>             (I)  is well grounded in fact; and
>             (II) is warranted by existing law or a good faith argument for the
>                  extension, modification, or reversal of existing law and does not
>                  constitute an abuse under paragraph (1).
> (D) The signature of an attorney on the petition shall constitute a certification that
>     the attorney has no knowledge after an inquiry that the information in the
>     schedules filed with such petition is incorrect.

Thus, § 707(b) requires an attorney, pre-petition, to review and make an inquiry into a debtor's financial affairs to ensure that the petition, and, if filed with the petition, the schedules[6] are accurate and correct. If an attorney fails to undertake this investigation, § 707(b)(4)(A) provides that the court may order the attorney to reimburse the trustee for all reasonable costs of filing any motion for dismissal under this subsection, including reasonable attorneys' fees, if the motion is granted and a violation of Bankruptcy Rule 9011 is found.[7]  One bankruptcy court[8] has stated:

> A reasonable investigation by counsel and the accompanying certification are essential to the administration of the bankruptcy case because the court, the trustee, and creditors are dependent upon debtors and their counsel providing accurate and complete information in the petition and schedules . . . The need for accurate and complete information is so critical that the failure to conduct a reasonable investigation or inquiry as to the information contained in the petition and schedules

---

[6] A "skeletal" filing is one missing most of the documents required for a bankruptcy case to proceed to discharge. Such a filing is, of course, authorized both under the Bankruptcy Rules and the Court's local rules. *See* Bankruptcy Rule 1007(c); SC LBR 1007-3. These rules recognize that a bankruptcy case may be commenced without the filing of all schedules, statements, and other documents, with the remaining documents typically to be filed within fourteen (14) days.

[7] Bankruptcy Rule 9011 provides, in relevant part:
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

[8] While different from the case before the Court, where Mr. Matthews was engaged to make a "skeletal" filing, these statements are nonetheless relevant to the Court's treatment of the issues before it. Under the bifurcated fee agreement model, a debtor is asked to sign a pre-petition contract wherein an attorney agrees to provide very limited legal services through the petition date. The attorney typically charges nothing or a small fee for performing the unbundled legal services, which consist of filing a "bare-bones" or "skeletal" case missing most of the documents required for a bankruptcy case to proceed to discharge. The idea is that, after the petition date, the debtor will be offered a new post-petition contract in which the debtor agrees to pay for the remaining deferred legal services (often at a rate higher than the standard up-front fee and payable in installments). The debtor is informed that if the debtor declines to sign a second fee agreement post-petition, counsel may withdraw, in which case the debtor will then proceed pro se or engage another lawyer. Here, Mr. Matthews acknowledges he must continue representation of the debtor unless released by the Court. There are some possible benefits as well as drawbacks to such a bifurcated fee agreement scheme.

may subject the certifying attorney to not only attorneys' fees and costs, but also sanctions.

The duty of reasonable inquiry imposed upon an attorney by Rule 9011 requires the attorney (1) to explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) to ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure of all information required of a debtor; (3) to check debtor's responses in the petition and schedules to assure they are internally and externally consistent; (4) to demand of debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor.

*In re Beinhauer*, 570 B.R. 128, 137 (Bankr. E.D.N.Y. 2017) (internal citations omitted). Other actions must be taken prior to the filing of a bankruptcy petition as well. Section 707(b)(4)(C)(ii)(II) also requires the attorney to make an abuse determination, which of necessity would include considering whether an evidentiary presumption of abuse might arise under the § 707(b)(2) "means test." The Pre-Filing Agreement does not contemplate completing the means test forms, thus leaving the attorney without the necessary information to consider whether the presumption of abuse may arise.

Additionally, pre-petition requirements are imposed on the clerk of court by § 342(b), which states:

Before the commencement of a case under this title by an individual whose debts are primarily consumer debts, the clerk shall give to such individual written notice containing—

**(1)** a brief description of—
    **(A)** chapters 7, 11, 12, and 13 and the general purpose, benefits, and costs of proceeding under each of those chapters; and
    **(B)** the types of services available from credit counseling agencies; and
**(2)** statements specifying that—
    **(A)** a person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury in connection with a case under this title shall be subject to fine, imprisonment, or both; and
    **(B)** all information supplied by a debtor in connection with a case under this title is subject to examination by the Attorney General.

A chapter 7 debtor's attorney is required under § 527 to provide the § 342(b) notice, as well as additional notices regarding seeking bankruptcy assistance services, to a debtor. Section 527 requires that a debt relief agency[9] providing bankruptcy assistance[10] to an assisted person[11] must provide, "not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear and conspicuous written notice" containing various disclosures. Section 528 imposes additional requirements on a debt relief agency, requiring that the debt relief agency, "not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's [bankruptcy] petition . . . being filed" enter into a written contract with the debtor that clearly explains the services being provided, the fees being charged, and provide the debtor with a copy of the fully executed contract. These provisions make clear that an attorney filing a bankruptcy petition on behalf of a debtor is required to provide a variety of services and disclosures before a debtor's bankruptcy petition can be filed.

### b.  Reasonableness of Bifurcated Fees

The Bankruptcy Code requires any attorney representing a debtor to "file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a). If the compensation exceeds the reasonable value of services provided, the Court may cancel the retainer agreement or order the return of payment to the extent

---

[9] "Debt relief agency" is defined in § 101(12A) as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110."  Section 101(12A) contains exclusions from its definition, none of which are applicable here.

[10] "Bankruptcy assistance" is defined in § 101(4A) as "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title."

[11] "Assisted person" is defined in § 101(3) as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425."

excessive to the estate or the entity that made the payment. 11 U.S.C. § 329(b). The Court is also provided authority to determine whether any payment to debtor's counsel, or any agreement therefor, is excessive under Bankruptcy Rule 2017.

The Fourth Circuit utilizes a lodestar method to evaluate the reasonableness of attorneys' fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). To determine the lodestar figure, the Court multiplies "the number of reasonable hours expended times a reasonable rate." *Id.* To determine what is reasonable in terms of hours expended and the rate charged, the Court must consider the following factors:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 88 n.5 (internal citations omitted). "The burden of demonstrating that a requested fee is reasonable always rests on the attorney requesting the fee." *In re Smith*, 624 B.R. 781, 795 (Bankr. D.S.C. 2021) (internal citations omitted). However, bankruptcy courts also recognize the need to award compensation that is "generous enough to encourage lawyers and others to render the necessary and exacting services that bankruptcy cases often require." *In re Dabney*, 417 B.R. 826, 829 (Bankr. N.D. Ga. 2009) (internal citations omitted). The Court also recognizes that flat fee agreements predominate in consumer bankruptcy cases, especially in chapter 7 bankruptcies.

## IV.    DISCUSSION

This matter is before the Court pursuant to the Motion for review of attorney conduct by the UST. The UST requests that the Court: (1) cancel the Agreements; (2) require the disallowance and return of funds received by Mr. Matthews; and (3) impose other remedies as may be just and appropriate. For the reasons stated below, the UST's Motion is granted in part and denied in part.

Citing that debtors choosing the "File Now Pay Later" option are charged more than other debtors represented by Mr. Matthews, the UST challenges the attorneys' fees as excessive and unreasonable under § 329. The UST further asserts that Mr. Matthews' disclosure of compensation (Dkt. No. 22, Ex. A; the "Fee Disclosure") is incomplete and misleading because it does not adequately disclose the mark-up. Finally, the UST alleges that, as a debt relief agency, Mr. Matthews is in violation of the Bankruptcy Code's debt relief agency provisions—11 U.S.C. §§ 526 and 528. Mr. Matthews contends the fees were reasonable based on the lodestar standard, which he asserts should be the focus rather than the difference in fees charged to different debtors. He posits that his disclosures to the Debtors were robust and sufficient to satisfy § 329 and the requirements of §§ 526 and 528. The Court addresses each argument in turn.

### a.   The Reasonableness of Bifurcated Fees under § 329

As the proponent of the request for approval of his fees, Mr. Matthews bears the burden of proving the reasonableness of the fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *In re Clark*, 223 F.3d 859, 863 (8th Cir. 2000). As will be discussed, he has not met that burden.

As a threshold matter, the Court has both the authority and an independent obligation to review fee agreements for compliance with the Code. 11 U.S.C. §§ 329, 526(c); Bankruptcy Rules 2016(b) and 2017. "[T]he determination of what is a reasonable amount of compensation is within the sound discretion of the court." *In re Goodbar,* 456 B.R. 644 (Bankr. W.D.Va. 2011) (citing *In*

*re Larson*, 346 B.R. 693, 700 (Bankr. E.D.Va. 2006)). The Fourth Circuit has held that a bankruptcy court may rely on its own knowledge and expertise of the reasonable attorneys' fees in the community to determine an appropriate attorneys' fee award. *See In re Botero-Paramo*, 483 Fed. App'x 779, 788-89 (4th Cir. 2012) ("[B]ecause nearly every case on a bankruptcy court's docket involves reviewing attorneys' fees and costs in the community, we find that bankruptcy courts are, in certain circumstances, particularly qualified to determine the reasonableness of fees based on their own expertise."). This Court routinely reviews fee applications by debtor's counsel and is familiar with the billing practices of bankruptcy attorneys in South Carolina. Therefore, the Court can determine reasonable attorneys' fees in this matter based on its own experience and expertise. *See In re Waters*, 634 B.R. 478, 498–99 (Bankr. D.S.C. 2021).

Here, the UST seeks to void or cancel the contract of employment between Mr. Matthews and the Debtors pursuant to § 329. As noted above, that Code section requires an attorney to disclose the compensation paid or to be paid in connection with the bankruptcy case, the disclosure of which is made by the attorney under Bankruptcy Rule 2016. The procedural mechanism for the application of this is Bankruptcy Rule 2017. This rule allows the Court, after notice and a hearing, to determine whether payments made to an attorney either before or after the filing of a petition are excessive. Bankruptcy Rules 2017(a), (b).

At the hearing on February 4, 2021, Mr. Matthews testified that the cases filed by the law firm outside of the bifurcated system had the "most common fee" of $1,750, which did not include the filing fee, credit report, and education class.[13] Transcript, February 4, 2021, Hearing, p. 121–

---

[13] By the Court's calculation, $1,750 for fees, $338 for the filing fee, $20 for the credit counseling, and $45 for the credit report totals $2,153. Option 1 also appears to exclude services that are included for clients who are not part of the bifurcated system. *See also* Exhibit 13 (admitted into evidence).

122, lines 6–25, lines 1–10. Mr. Matthews charged more for cases in the bifurcated system, whether the clients elected to pay up front under Option 1 ($2,350) or over time under Option 2 ($2,800). Mr. Matthews charged a lesser amount to those debtors who prepaid the entire amount of the fees; however, those clients paid additional fees at an hourly rate for those services designated as "supplemental post-filing services," while those who chose the bifurcated fee arrangement did not. This is so despite the local rule which limits permitted exclusions from the scope of representation to adversary proceedings and appeals. SC LBR 9011-1(b) (requiring attorneys to perform all duties in connection with the representation of debtors, beginning with pre-petition disclosures and investigations and the preparation of the petition, through the filing of the petition and conclusion of the case, with the exception of adversary proceedings and appeals when excluded in writing). Further, in the three cases at issue before the Court, the total amount paid by the Debtors differed. In the Court's view, the fact that bifurcated fee arrangements result in debtors paying additional fees weighs against the reasonableness of the fees.

Mr. Matthews argues that the Court must consider the reasonableness of his fees in these cases under a lodestar analysis; to determine the lodestar figure, the Court multiplies "the number of reasonable hours expended times a reasonable rate." *McAfee*, 738 F.3d at 88 (internal citations omitted). However, the Court cannot reach the same conclusion on the evidence presented. The only evidence Mr. Matthews produced in support of his lodestar argument is Exhibit A, which purports to show a breakdown of hourly legal services he might charge a debtor in a hypothetical chapter 7 case. (Dkt. No. 48, Ex. A). Unfortunately, because this breakdown bears little resemblance to Mr. Matthews' customary practice in handling chapter 7 cases and includes work that typically does not arise in a straightforward chapter 7 filing, it is of minimal evidentiary value to the Court. The exhibit lacks any relevance as to what services were actually performed by Mr.

15

Matthews in *these* cases, or might reasonably be anticipated in *these* cases, as opposed to some hypothetical case. Furthermore, Mr. Matthews testified at the February 4, 2021, hearing that he does not keep contemporaneous time records for his work in these "flat fee" chapter 7 cases. Simply put, Mr. Matthews has presented no evidence that would enable the Court to conduct a lodestar analysis. His fee structure—like that of most chapter 7 debtor's counsel—is based on a fixed fee.

Mr. Matthews' argument also misses the mark because courts are not bound to apply the lodestar calculation in every case where attorneys' fees are challenged. For example, in *In re Kula* 213 B.R. 729, 737 (B.A.P. 8th Cir.1997), the United States Bankruptcy Appellate Panel of the Eighth Circuit found that in chapter 13 cases, wherein most of the attorney services are "normal and customary," the lodestar analysis may not be the best method to use when determining reasonableness. Similarly, the Eighth Circuit has affirmed the reduction of legal fees in a chapter 7 case based on a consideration of the "lack of complexity and the customary legal fees that are awarded in [the relevant] community for planning, preparing, and filing the necessary schedules and petition for a Chapter 7 case." *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 758 (8th Cir. 1997). *See also In re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998). The three cases at issue do not reflect anything other than the usual complexity of a chapter 7 case.

In a case reminiscent of the facts at hand, *In re Allen* 628 B.R. 641 (B.A.P. 8th Cir. 2021) also involved FSF-financed bifurcated fee agreements. The United States Bankruptcy Appellate Panel of the Eighth Circuit affirmed the decision of the United States Bankruptcy Court for the Eastern District of Missouri, where the bankruptcy court found that the total bifurcated fees were unreasonable and subsequently reduced the fees to the amount the attorney had agreed to charge if the debtor had paid up front. Similar action is warranted here, as the attorneys' fees and costs

before the Court are not reasonable and necessary. It appears that the fees under the "File Now Pay Later" option are significantly higher than normally charged to cover the costs of Mr. Matthews' arrangement with FSF. Accordingly, a reduction of Mr. Matthews' fees commensurate with the post-petition work is appropriate.

i.    <u>Customary chapter 7 fees</u>

This Court recognizes that counsel in chapter 7 cases charge a range of fees in this District. Ignoring the fees charged on either end of the spectrum, a fee in the range of $1,000 to $1,700 is not unusual. Other reputable attorneys often charge fees ranging from $1,700 to $2,100. The fee covers all services pre- and post-petition, usually only excluding adversary proceedings and appeals.[14] Mr. Matthews testified that he effectively waived or did not charge for pre-petition services in certain bifurcated fee engagements (i.e., in the "zero-down" cases), yet the total fees he charged, for post-petition services only, still exceeded the customary fees charged by other well-regarded chapter 7 counsel[15] for both pre- and post-petition services, which calls into question whether the charge for pre-petition services was truly waived and suggests that the fee for post-filing services alone is excessive.

**b.  The Adequacy of the Disclosures to the Debtors under §§ 526-528**

Section 526 provides that a debt relief agency[16] may not make any statements or advise an

---

[14] Some attorneys in this District add supplemental fee schedules, which the Court observes may also be inconsistent with SC LBR 9011-1(b).

[15] In deciding these matters, the Court takes no issue with Mr. Matthews' reputation, nor does it seek to limit chapter 7 attorneys' fees to a ceiling of $1,700, which is on the high end of the range the Court has observed. Some attorneys in this District routinely charge more than $1,700 without drawing objection. The point is that Mr. Matthews waives the fee for some pre-petition services and *still* charges more than the high end of fees charged by many other practitioners. The pre-petition services, including ascertaining the debtor's financial circumstances and verifying the same, form the basis for the legal strategy that will drive the entire bankruptcy case. Thus, these are services that require the utmost skill and acumen.

[16] A bankruptcy attorney is a debt relief agency. *See* § 101(12A) (defining "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232 (2010) (holding that a bankruptcy attorney falls within the definition of a "debt relief agency.").

assisted person to make any statement in a document filed with the Court that are untrue or misleading or that the agency, upon the exercise of reasonable care, should have known to be untrue or misleading. 11 U.S.C. § 526(a)(2). As a debt relief agency, Mr. Matthews was required, within five (5) days after first providing services and before the filing of the bankruptcy petition, to execute a written contract that clearly and conspicuously explained the services he would provide the debtor, the fees or charges for such agreement, and the terms of payment. 11 U.S.C. § 528(a)(l). Here, "[t]he Pre-Petition and Post-Petition Contracts are anything but models of clarity, and fall far short of the required clear and conspicuous explanation of services to be provided, fees to be charged, and terms of payment." *In re Milner*, 612 B.R. 415, 442 (Bankr. W.D. Okla. 2019).

In *In re Smith* No. BR 21-40540-JMM, 2022 WL 1434635 (Bankr. D. Idaho May 5, 2022), the bankruptcy court addressed a motion for sanctions regarding an attorney's conduct that included the bifurcation of fees and services. The attorney factored the debtor's receivables with FSF. The bankruptcy court found that the attorney's disclosures in the disclosure of compensation were plainly misleading and inconsistent. *Id.* at *9. The bankruptcy court noted that, in paragraph 5 of the disclosure, the attorney stated that for the agreed amount to be paid, the attorney would perform specific services which included pre- and post-petition services. However, in paragraph 9 of the disclosure, the attorney stated that there were two agreements and some of the pre-petition services included in paragraph 5 were covered by the first agreement with any fees not paid to be waived. *Id*. at *9-10. Due to the inconsistent and misleading information in the disclosure, the bankruptcy court required the return of all fees. *Id*. at *12. The disclosures of compensation filed in this case similarly contain inconsistent language. *See* Exhibit 6 (admitted into evidence).

The Pre-Filing Agreement does not contain a clear and conspicuous explanation of fees. Specifically, the agreement is unclear and confusing in the following material ways: (1) it fails to

accurately describe the fees charged and supplemental services provided in cases in which debtors

paid up front during the same time period that Mr. Matthews was using the bifurcated agreements;

(2) it fails to accurately state the mark-up for the "File Now Pay Later" option; (3) it states that

Mr. Matthews would continue as attorney of record until relieved by court order, while excluding

legal services necessary to provide adequate legal representation after the filing of the petition; (4)

it fails to clarify what services Mr. Matthews would continue to provide if a debtor failed to sign

the Post-Filing Agreement and how the process to withdraw as counsel would work; (5) it states

the cost of the legal services as $0 or $500 (or, in the Prophets' case, $1,200) but sets forth payment

terms involving payments to be made over 52 weeks, 26 bi-weeks, 24 semi-months, or 12 months;

(6) it states that Mr. Matthews performs additional work to split the engagement, but it fails to

state the additional work required; and (7) it fails to specifically set forth what information Mr.

Matthews would share with FSF. Due to these unclear and confusing provisions, the Pre-Filing

Agreement does not comply with the material provisions of § 528 and is void and unenforceable.

*See* 11 U.S.C. § 526(c)(1). There is no question the disclosure is internally inconsistent, which

places a debtor at risk due to a lack of clarity about what services to expect Mr. Matthews to

perform for the agreed-upon sum.

As the Agreements are part of a unitary arrangement for charging and collecting attorneys'

fees, the Post-Filing Agreement is void and unenforceable as well. Moreover, as noted supra, the

terms of the Post-Filing Agreement appear to create a paradox. The Agreements are designed to

change the attorneys' fees into a post-petition, nondischargeable debt that can be collected from a

debtor without violating either the automatic stay or the discharge injunction; however, the Post-

Filing Agreement contains a disclaimer at the very top of the agreement, which states, "You must

read, understand, and agree to the Post-Filing Agreement stated below before your Pre-Filing

Agreement will be considered legally binding." (Dkt. No. 48, Ex. 4). It is unclear why this should not be considered a pre-petition obligation subject to the discharge; while merely dubious to the Court, such ambiguity is potentially detrimental to a debtor.

The Fee Disclosure is also deficient in setting forth from whom Mr. Matthews was receiving payment and whether Mr. Matthews was sharing the compensation with another party outside of his firm. For the source of the compensation paid and to be paid to Mr. Matthews, the Fee Disclosure includes question marks. If Mr. Matthews was uncertain of the agreements, the Debtors could not have been fully informed and made an informed decision. The Fee Disclosure fails to fully or accurately disclose the mark-up of the higher fee for "File Now Pay Later," the amount of payments that a debtor will make over time,[17] that certain services will not require additional fees that would be required if a debtor chose to pay up front, that FSF advances approximately 60% of the post-petition fees, or that a debtor's information will be shared with FSF.

Thus, the Agreements do not pass muster. As the statute indicates, § 526(a)(2) is violated if a debt relief agency makes, or counsels or advises any assisted person to make, a statement in a document that is filed with the court, that is untrue or misleading, or should have been known to be untrue or misleading using reasonable care. Finally, if a debt relief agency misrepresents the services that it will provide to an assisted person or the benefits and risks that may result if such person files a bankruptcy petition, then § 526(a)(3) may have been violated. Mr. Matthews has failed to comply with material requirements imposed on attorney-client relationships and fee agreements by §§ 526(a)(2)–(3) and 528(a)(1). These material defects render the Agreements statutorily void under § 526(c)(1).

---

[17] The payments are also not included in Schedule J as either a current expense or as an anticipated change in expenses.

Furthermore, the practice of attempting to limit services to those rendered pre-petition is particularly questionable if Mr. Matthews did not fully apprise Debtors of the many potential pitfalls to a bankruptcy case, such as failing to file additional documents, failing to attend the meeting of creditors, failure to comply with § 521, and noncompliance with a myriad of other requirements—likely unknown to a layperson—which may serve as cause for dismissal, give rise to other restrictions on the relief a debtor may receive, or result in sanctions. *See, e.g.,* 11 U.S.C. § 109(h) (requiring that all individual debtors take a pre-bankruptcy credit briefing course and file a certificate evidencing such a course was completed); 11 U.S.C. § 362(c)(3) & (4) (establishing special automatic stay rules for debtors with other bankruptcy cases pending within the preceding 1-year period); 11 U.S.C. § 521(i) & (j) (providing debtor is required to file specific items within forty-five days of commencement of the case and to file specific tax returns, and that failure to do so is grounds for dismissal of the case); Bankruptcy Rules 4004(c)(1)(H) (specifying that debtor's failure to timely file a certificate verifying completion of the required financial management course may preclude discharge); and 11 U.S.C. § 707(a) (authorizing a bankruptcy court to dismiss a chapter 7 if a debtor fails to do what the Code requires). Further, attention to matters such as § 522(f) lien avoidance is both routine for counsel and fundamental to the complete relief of debtors, because, if not utilized, these liens may pass through bankruptcy and could impair property that would otherwise be exempt and free of judicial and certain non-purchase money consumer security interests. Mr. Matthews' testimony does not indicate that he made the Debtors fully aware these additional services may be necessary to provide complete relief.

i.  <u>The propriety of using FSF to collect from Debtors</u>

The Office of the United States Trustee has recently weighed in on the matter of bifurcated fee  arrangements  with  its  *Guidelines for United States Trustee Program (USTP)  Enforcement*

*Related to Bifurcated Chapter 7 Fee Agreements* ("UST Guidelines") published on June 10, 2022.[18] The UST Guidelines provide that "arrangements that employ outside parties to finance bifurcated fee agreements, including (but not limited to) factoring, assignment of the attorney's accounts receivable, and direct lending to clients, warrant significant additional scrutiny." Here, Mr. Matthews is using the advertisement of "zero-down" chapter 7 bankruptcy to increase his client base. However, to implement the system, Mr. Matthews appears to have inflated his fees for clients wishing to pay all fees up front, changed at least two services to supplemental instead of included, and had his clients enter into two agreements—one of which requires payments a debtor may struggle to make, thus subjecting him or her to collection actions in contravention of the fresh start being sought.

Mr. Matthews has acknowledged that he was providing limited services prior to the bankruptcy filing. He did not review documents or perform any public searches, but he did review the Debtors' respective incomes in considering whether they might qualify under chapter 7 and asked some questions that may affect the choice of bankruptcy chapter. Such a limited review is ripe for oversights that could materially impact debtors. Additionally, the Agreements are silent as to the risks of providing such limited consultation prior to the bankruptcy filing, except for a disclaimer that, after further review and analysis, it may be determined that a chapter 13 bankruptcy case is more appropriate than a chapter 7 bankruptcy. *See* Pre-Filing Agreement part 6, paragraph B. This could result in an unanticipated five-year repayment plan for some debtors and is inconsistent with a pre-filing abuse review.

---

[18] The UST Guidelines may be accessed at https://www.justice.gov/ust/page/file/1511976/download. Although this guidance is not binding on the Court and was not published at the time Mr. Matthews entered into these engagements, it is nonetheless informative of best practices and is worthy of consideration.

The Debtors in this case are paying substantially more than a debtor paying up front and Mr. Matthews' disclosures of this are misleading and inaccurate. The Court emphasizes it does not take issue with the actual legal services provided to Debtors by Mr. Matthews. Rather, the Court's sole concern is the mechanism he selected for payment of his attorneys' fees. Such mechanism, with insufficient disclosures and confusing contracts, resulted in a significant up-charge in the form of post-petition debt being incurred by financially challenged, distressed, and unsophisticated debtors.

The bifurcated fee and services structure used by Mr. Matthews conflicts with his duty to adequately represent his clients and conflicts with the client's interests.[20] Because the bifurcated fee structure denies compensation for pre-petition services, it has the logical and practical effect of discouraging attorneys from performing pre-petition services, thus limiting the time and effort spent on such services. Therefore, the bifurcated system either impairs the necessary pre-petition investigation and analysis, or it encourages the deceptive labeling of pre-filing services as post-filing services. This design prevents compensation for services from being discharged and facilitates the collection of such compensation.

The Court recognizes that for many debtors, chapter 7 bankruptcy has historically presented a Catch-22: debtors may need the debt relief that bankruptcy provides, but their financial situation may not allow for up-front payment to an attorney. Nonetheless, there are dangers

---

[20] In *Smith*, the bankruptcy court stated it had insufficient evidence to conclude that the disclosure created a conflict of interest but noted that ". . . while it appears from the face of the documents in the Court's docket that [the attorney] may have signed [d]ebtors up for a plan that was potentially harmful to [d]ebtors but beneficial to himself, the UST has not proven this is the case." *In re Smith*, No. BR 21-40540-JMM, 2022 WL 1434635 (Bankr. D. Idaho May 5, 2022). The evidence submitted in the foregoing case showed the negative impact the post-petition payments have, or may have, on debtors and the benefits the arrangement provides to the law firm. At the February 4, 2021, hearing in the present cases, Mr. Matthews testified that the services provided by FSF to the law firm according to the Line of Credit and Accounts Receivable Management Agreement, admitted as Exhibit 1, were beneficial to the law firm rather than the clients. Transcript, February 4, 2021, Hearing, pp. 123-124, lines 8-25 and 1-9.

inherent in factoring or financing agreements of this nature. Such agreements may result in extremely difficult financial situations for debtors with negative disposable income—as in Ms. Naughton's case—who are, consequently, forced into an unwise or burdensome credit arrangement. In many instances, this may not be in a debtor's best interest. While there may be compelling policy reasons supporting a bifurcated payment structure to expand access to justice, the Court emphasizes that such means may not always yield beneficial results for debtors and may instead deprive them of the fresh start sought under the Bankruptcy Code. Caution is therefore warranted in such arrangements.[21]

### c.  Whether the Debtors Provided Informed Consent

Informed consent is a prerequisite to an enforceable bifurcated fee agreement. This requirement is derived directly from the Bankruptcy Code. The Code requires that attorneys representing consumer debtors deal forthrightly and honestly with their clients, that they not make misrepresentations about the services they will provide or the benefits and risks of filing bankruptcy, and that they make certain disclosures and promptly enter into clear and conspicuous written contracts explaining the services the attorney will render and the terms of any fee agreement. 11 U.S.C. §§ 526–528; *See also* UST Guidelines at p. 4. As discussed above, the information in the Pre-Filing Agreement is not clear and conspicuous regarding the fees being paid, the services being provided, and the risks therein.[22] The misrepresentations and misleading nature of the Pre-Filing Agreement and Post-Filing Agreement negates informed consent.

---

[21] Perhaps Congress rather than for-profit factoring companies can better address these issues.

[22] The Fee Disclosure indicates that Mr. Matthews does not understand or cannot explain how the bifurcated system works by his use of "?". Clearly, if Mr. Matthews does not understand it, the Debtors cannot provide informed consent in writing. As an additional source of doubt, the Court also takes note of one debtor's DocuSign log, showing he signed the post-filing agreement on August 7, 2020—one minute and twenty-one seconds after he viewed the document.

## V.       CONCLUSION

The Court concludes the fees charged are excessive and the disclosures fall short of providing accurate information. Further, by the very terms of the Agreements, the post-filing fees may be discharged as pre-petition obligations. Thus, for the reasons set forth above, the bifurcated fee agreements are impermissible, and the UST's Motion is granted in part. Mr. Matthews is ordered to return to the Debtors all fees paid post-petition under these Agreements, less any filing fees or out-of-pocket costs, within thirty (30) days of the date of entry of this order. To the extent the UST's Motion requests relief in the form of sanctions, it is denied.

IT IS SO ORDERED.

**FILED BY THE COURT**
**10/06/2022**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 10/06/2022